Sharon A. WAISBLUM, Respondent,

v.

Richard A. WAISBLUM, Appellant.

No. WD 54255.

Missouri Court of Appeals,
Western District.

May 12, 1998.

Michael P. Harris, St. Joseph, for appellant.

Thomas R. Summers, St. Joseph, for respondent.

Before LAURA DENVIR STITH, P.J.; and HANNA and RIEDERER, JJ.

RIEDERER, Judge.

Richard A. Waisblum appeals from a judgment of dissolution of marriage. Appellant contests the division of the marital property.

### Facts

The parties married on May 25, 1990. They separated during February 1993 for three months, with the final separation occurring on September 26, 1994. The Petition for Dissolution of Marriage was filed on September 26, 1994. The marriage dissolved on October 31, 1996 and final judgment was entered on March 19, 1997. No children were born of the marriage, although, Respondent's minor daughter, Mindy, resided with the parties.

While the parties lived together, Respondent was employed full-time as a deputy clerk at the Buchanan County Courthouse. She earned a monthly gross salary of $1,652.00, and received monthly child support for Mindy in the sum of $565.98. Respondent also made $5.25 per hour working a second job at Shop & Hop. Appellant sold health and life insurance for Reserve National. In 1996, Appellant had eight surgeries on his left eye. At the hearing, he indicated that he is now totally blind in the left eye. As a result, he testified that his commission income from insurance sales will decrease from the $34,000.00 he earned in 1995.

At the time of the marriage, Appellant owned a condominium which he was awarded in a previous divorce settlement. Title to the condominium remained in Appellant's separate name until June 1993, when Respondent's name was added. The parties lived in the condominium from the date of their marriage until it was sold in August of 1993. The parties received approximately $9,900.00 in cash from the sale of the condominium, which was used towards the purchase of a $135,000.00 house at 4008 North 38th St., St. Joseph, Missouri. Appellant also contributed an additional amount of approximately $2,000.00 to the purchase of the house. Appellant testified that in his opinion the fair market value of the house is $145,000.00. Respondent listed the fair market value of the house at $165,000.00, based upon the testimony of Jeffrey King, an appraiser.

During 1992, Appellant ruptured his left Achilles tendon and was off work for approximately eight months. Appellant withdrew $25,000.00 from his retirement account to pay for family living expenses. This entire account was exhausted during the marriage. In June of 1993, both Appellant and Respondent signed a promissory note to Appellant's mother for a cash loan of $7,700.00. Appellant used some of his retirement funds and some of the proceeds of the loan from his mother to pay off credit card balances mainly incurred by Respondent during the marriage, totaling approximately $12,000.00. The rest of the loan from his mother was used to help the parties purchase the house. The loan was repaid with marital funds.

Prior to the marriage, Respondent received a $28,000.00 inheritance. Respondent paid off debt, purchased a new car, and purchased an unspecified amount of furnishings for the house at 4008 N. 38th St. Respondent also gave Appellant $1,000.00, pur-

chased Appellant's wedding ring, and paid for their honeymoon.

During the marriage, each of the parties maintained a separate checking account. Respondent used her separate checking account to pay her car and car insurance payments, to purchase clothing for herself and her daughter and for personal expenses for herself and her daughter. Respondent did not make any of the loan or mortgage payments on the condominium or the house. Nor did she pay for any utility, insurance, taxes or repairs for either residence. Appellant made all of the loan and mortgage payments and paid all the utility, insurance, taxes and repairs for both the condominium and the house. Appellant also paid the food bills, frequently cooked, and hired a cleaning lady.

The judgement entry on March 19, 1997, finds that Respondent's inheritance and received gifts had been transmuted into marital property, and also finds that Appellant's retirement fund and equity from the condominium had been transmuted into marital property. The judgment entry finds the value of the house to be $165,000.00. Appellant was granted the house, which has approximately $125,747.00 left on the mortgage. Appellant was also ordered to pay $12,022.50 to equalize the division of marital property.

## Procedural History

Respondent filed her petition for dissolution of marriage on September 26, 1994. Respondent's petition for dissolution was heard on October 31, 1996. On March 19, 1997, a judgment entry for dissolution of the marriage was made. On April 4, 1997, a motion to amend or modify the judgment entry was filed by Appellant. On April 11, 1997, Respondent filed a motion for a new trial, or, in the alternative, motion to amend judgment entry for dissolution of marriage. On April 15, 1997, both Appellant and Respondent's motions were denied. No changes were made to the judgment entry of March 19, 1997. This appeal ensued.

**1.** All statutory references are to RSMo 1994,

## Standard of Review

■ Divorce decree provisions will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Crews v. Crews*, 949 S.W.2d 659, 663 (Mo.App.1997) (*quoting, Allen v. Allen*, 927 S.W.2d 881, 885 (Mo.App.1996)). The party challenging the divorce decree has the burden of demonstrating error. *Id.* The trial court's division of marital property will only be disturbed if the distribution of marital property is 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.' *Id.* (*quoting, Dodson v. Dodson*, 904 S.W.2d 3, 6 (Mo.App.1995)). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *In re Marriage of Jennings*, 910 S.W.2d 760, 765 (Mo.App.1995). The order is presumed to be correct and the party challenging the division on appeal has the burden of overcoming the presumption. *Kettler v. Kettler*, 884 S.W.2d 729, 731 (Mo.App.1994).

## Division of Marital Property

In Appellant's sole point of error, he alleges that the trial court's equal division of the marital property is (1) against the weight of the evidence; (2) erroneously applies the law; and (3) is unjust because it failed to take into consideration the contribution of each spouse to the acquisition of marital property and the economic circumstances of each spouse at the time of the division of property as required by § 452.330.[1]

■ Section 452.330.1 provides in pertinent part:

1. In a proceeding for dissolution of the marriage or legal separation ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

unless otherwise noted.

(1) The economic circumstances of each spouse at the time the division of property is to become effective . . . ;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage;

(5) Custodial arrangements for minor children.

Appellant contends that the trial court did not equitably divide the marital property because it did not properly consider factors (1) the economic circumstances of each spouse at the time of division of the property, and (2) the contribution of a spouse as a homemaker. For the reasons discussed, *infra*, we find that this contention is not supported by the record. "Section 452.330.1 gives the trial court great flexibility and far-reaching power to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider." *Crews*, 949 S.W.2d at 664. The court is only required to make a fair and equitable division of property. *Id.*

### A. Contribution

■ Appellant claims the trial court could not have properly considered the factors enumerated in § 452.330.1 and have determined that an equal distribution of the marital property was fair and equitable, given the contributions of Appellant in comparison to the contributions of Respondent.

■ Specifically, Appellant contends that the trial court did not consider his contribution of funds from the sale of the condominium used to purchase the house and the exhaustion of his retirement fund during the marriage since the trial court determined that these funds had been transmuted into marital property. While Appellant agrees that the condominium was transmuted into marital property when Respondent's name was added to the title three months before it was sold, Appellant argues that the fact of

transmutation does not negate the trial court's duty of considering the contribution of each spouse to the acquisition of the marital property. When separate property is put into the joint names of both spouses it creates a presumption that the property has become marital property. *In re Marriage of Jennings*, 910 S.W.2d at 763. Once property is classified as marital, the factors listed in § 452.330 apply in dividing the property. *Gremaud v. Gremaud*, 860 S.W.2d 354, 357 (Mo.App.1993). There is no formula to determine the weight to be given to each of those factors. *Id.*

Appellant cites *Gremaud*, 860 S.W.2d at 357, for the proposition that "transmutation of separate property into marital property will not preclude the trial court from considering the pre-marital contribution in dividing the marital property." Nevertheless, *Gremaud* does not therefore require any more consideration than that contemplated by § 452.330.1.

■ In *In re Marriage of Smith*, 785 S.W.2d 764, 765 (Mo.App.1990), husband bought a house prior to the marriage using $36,000.00 of his own money as a down payment. Four months after husband married wife, he had the deed to the home placed in both his and his wife's name. Husband claimed that the court improperly classified the house as marital property without setting aside his $36,000.00 down payment as separate property. In *Smith*, the court determined that the trial court's refusal to set aside husband's $36,000.00 down payment as his separate property was not error. "Indeed, the addition of a spouse's name to a document of title of a residence creates a tenancy by the entirety and the property is presumed marital." *Id.* at 766.

In our case, Appellant held title to the condominium in his separate name until June 1993, when Respondent's name was added. The condominium was later sold and the $9,900.00 received from the sale of the condominium was used to purchase the house. The trial court determined that the money used to purchase the house was marital property. This determination was not erroneous, for Appellant failed to rebut the marital property presumption with clear and convinc-

ing evidence. Appellant argues that the judge's note stating, "this eliminates Respondent's claim for $11,126,56 condominium equity" is clear and convincing evidence that the trial court did not take into consideration his contribution to the equity in the condominium. However, this note pertains to Appellant's claim below that this amount was marital property. It does not purport to mean that the court failed to consider the contribution in the later decision to divide marital property. Appellant contends that the division of property is against the weight of the evidence. Under these circumstances, this court will not reverse unless we are left with the firm belief that the judgment below is clearly wrong. *Lenger v. Lenger*, 939 S.W.2d 11, 13 (Mo.App.1997). We find nothing in the record to indicate that the trial court did not consider all of the factors set forth in § 452.330.1.

Appellant also maintains that the court failed to take into consideration that Respondent did not make any of the mortgage or bank payments and did not pay the insurance, taxes, utilities, or repairs on either the condominium or the house. Again, the record does not reflect any indication that the trial court failed to take these issues into consideration.

### B. Economic Circumstances

■ Appellant further contends that the trial court did not properly consider the economic circumstances of each spouse at the time the division of the property is to become effective as required by § 452.330. "Under § 452.330.1(1) the trial court must divide the marital property in such proportions as the court deems just after consideration of all relevant factors, including each spouse's 'economic circumstances'... at the time the division of property is to become effective ..." *Stratman v. Stratman*, 948 S.W.2d 230, 236 (Mo.App.1997).

Appellant argues that he no longer has his $25,000.00 retirement account; his eyesight has diminished which means he will not be able to work as much as he did in the past; he no longer has the funds he repaid his mother for the $7,700.00 loan, nor the approximately $12,000.00 he used to pay off credit cards and other debts owed by Respondent. Respondent earns a monthly gross salary of $1,652.00, receives monthly child support in the sum of $565.98, and earns an additional $5.25 per hour working a second job. Appellant earned approximately $34,000.00 in 1995. As a result of his eye problems, Appellant's earnings will be less, approximately $1,500.00 to $1,800.00 a month.

■ "The term 'economic circumstances' in Section 452.330.1 is broad enough to include the parties' capacity to work and earn." *In re Marriage of Gilmore*, 943 S.W.2d 866, 877 (Mo.App.1997). While it is clear that Appellant's income has decreased, it cannot be said that Appellant no longer has the capacity to work and earn.

### Trial Court Error

■ Appellant argues that the division of property in the decree of dissolution is against the weight of the evidence. We agree. Although the court did consider all of the required statutory factors, there is no formula respecting the weight to be given each factor. *Crews*, 949 S.W.2d at 664. After considering these factors, we are left with a firm belief that the trial court's division was clearly wrong. *Lenger*, 939 S.W.2d at 11. The division of property in this case is so heavily and unduly weighted in favor of Respondent as to amount to an abuse of discretion. It is simply against the logic of the circumstances of the case. *Crews*, 949 S.W.2d at 664. During the marriage, Appellant exhausted his $25,000.00 retirement account on family living expenses. Having found that Appellant's retirement fund and his premarital equity in the condominium to be marital property, the trial court set aside non-marital property to the Respondent nearly seven times that of Appellant; and allowed to Appellant no cash or cash equivalent property; and although allowing the home to Appellant, the court valued it at $165,000.00, an increase of $30,000.00 in three years. This court can and should consider the financial circumstances of the parties. The trial court ordered Appellant to pay Respondent $12,022.50 "to equalize the division of marital property." The property awarded to Appellant had a net value of

$42,823.00, which was $24,045.00 more than awarded to Respondent; thus this $12,022.50 would make the division of marital property exactly fifty percent to each party. The trial court did an admirable job of cataloging and awarding the property involved. However, 93% of the marital property awarded to the Appellant was non-cash equity in the home, and the requirement that the Appellant make a substantial cash payment "to equalize" the division is simply against the logic of the circumstances of this case and leaves us with the firm belief that this part of the judgment is clearly wrong.

## Conclusion

The judgment of the trial court ordering the Appellant to pay Respondent $12,022.50 is reversed. In all other respects the judgment is affirmed.

LAURA DENVIR STITH, P.J., and HANNA, J., concur.