**In re MARRIAGE OF Glenn Edwin KIRKHAM and Leona L. Kirkham.**

**Glenn Edwin KIRKHAM, Petitioner–Respondent,**

**v.**

**Leona L. KIRKHAM, Respondent–Appellant.**

No. 22038.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 17, 1998.

**502**

John E. Price, Eric G. Jensen, Price, Fry & Robb, P.C., Springfield, for appellant.

Randy R. Cowherd, M. Sean McGinnis, Newberry, Haden, Cowherd, Bullock & Keck, L.L.C., Springfield, for respondent.

BARNEY, Judge.

Leona L. Kirkham (Wife) appeals from the trial court's amended judgment entered on December 5, 1997.

The trial court dissolved Wife's eight-year marriage to Glenn Edwin Kirkham (Husband) in a judgment entered on January 31, 1994. Following the entry of the 1994 judgment, however, the parties stipulated that the portions of the trial court's judgment and decree affecting the distribution of marital and non-marital property should be set aside. The court acquiesced in the stipulated request and held an evidentiary hearing and entered its judgment on July 10, 1995.

Wife appealed to this Court from the trial court's judgment entered July 10, 1995, and we affirmed in part but reversed and remanded the matter for additional findings regarding the classification of the parties' property as either marital or non-marital, and matters relating to the distribution of property and maintenance. *See In re Marriage of Kirkham*, 935 S.W.2d 392, 393 (Mo. App.1996).

In her appeal from the trial court's amended judgment and decree entered December 5, 1997, Wife now assigns five points of trial court error, four directed at the trial court's classification, distribution and valuation of marital and non-marital property and one

directed to the court's decision to deny an award of maintenance to Wife.

"Provisions in a [dissolution] decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Crews v. Crews*, 949 S.W.2d 659, 663 (Mo.App.1997). "The burden of demonstrating error is on the party challenging the ... decree." *Id.*

"A trial court is vested with considerable discretion in dividing marital property; an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Box*, 968 S.W.2d 161, 169 (Mo.App.1998); *see also* § 452.330, RSMo 1994. As to a trial court's decision on the issue of whether to award maintenance, "the trial court is [also] granted broad discretion, and the evidence is viewed favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Crews*, 949 S.W.2d at 663; *see also* § 452.335, RSMo 1994.

Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *In re Marriage of Box*, 968 S.W.2d at 169. If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion. *Id.*

We do not ignore these strictures of appellate review in addressing Wife's assignments of trial court error.

In the trial court's amended judgment and decree, it awarded Husband the following separate, non-marital property: [1]

(1) *Tract A:*

A one-half interest in a house and one (1) acre acquired before the marriage and described as follows:

_____

1. All real estate has been designated as Tract "A," "B" or "C" for purposes of clarification.

A part of the SW 1/4 of the NE 1/4 of Section 22, Township 28, Range 18, described as follows: Commencing at the NW corner of said SW 1/4 of the NE 1/4 and running thence East 210 feet, thence South 210 feet, thence West 210 feet, and thence North 210 feet to the place of beginning, SUBJECT to all public and private roads and all easements of record. Situated in Webster County, Missouri.

(2) .50 caliber black powder rifle.

(3) $8,676.00 of retirement account at Paul Mueller Company, acquired prior to marriage.

The trial court valued the one-half interest in the house and one (1) acre of real property, comprising Tract A, at $15,000.00.

The trial court then recited in its judgment that "having considered the statutory factors, finds that Husband was the primary source of the acquisition of the parties' marital property, and that the following is an equitable division of the marital property and debts and orders the marital property and debts divided as follows":

TO HUSBAND:

(1) *Tract B:*

The (other) one-half interest in the house and one (1) acre acquired from Husband's former wife after the marriage and described as:

A part of the SW 1/4 of the NE 1/4 of Section 22, Township 28, Range 18, described as follows: Commencing at the NW corner of said SW 1/4 of the NE 1/4 and running thence East 210 feet, thence South 210 feet, thence West 210 feet, and thence North 210 feet to the place of beginning, SUBJECT to all public and private roads and all easements of record. Situated in Webster County, Missouri.

The trial court valued this (other) one-half interest in the house and one (1) acre of real property, comprising Tract B, at $15,000.00.

(2) *Tract C:*

128 acre farm described as:

The SW 1/4 of the NE 1/4 and the NW 1/4 of the SE 1/4 and the W 1/2 of the NE 1/4 of the SW 1/4, and all that part of the SW 1/4 of the SE 1/4 lying North of Finley Creek; all in section 22, Township 28, Range 18. ALSO, a part of the SE 1/4 of the SW 1/4 of said Section 22 described as commencing at the NE corner thereof and running thence South along the East line thereof a distance of 438 feet, more or less, to center of branch for a beginning point; thence Southwesterly with the meanderings of said branch to the North bank of Finley Creek; thence Easterly along the North bank of said Finley Creek to the East line of said Quarter Quarter; thence North with the East line thereof to the place of beginning. EXCEPTING THEREFROM a part of the SW 1/4 of the NE 1/4 of said Section 22 described as commencing at the NW corner of said Quarter Quarter and running thence East 210 feet, thence South 210 feet, thence West 210 feet, thence North 210 feet to the place of beginning. ALSO EXCEPTING a roadway conveyed to Bert R. Kirk and Mary E. Kirk, his wife, described as being a square tract in the Northwest corner of said SW 1/4 of the SE 1/4, being 30 feet on each side, and the West 30 feet of the NW 1/4 of the SE 1/4, all in said Section 22. Situated in Webster County, Missouri.

The trial court noted that "the house on the farm is subject to a life estate in [Husband's] mother who at the time of divorce was 71 years old. The Court, having observed the [Husband's] mother and age, finds the net value of the farm to be $60,812.00."

(3) 1989 Chevrolet pickup .................................................. $5,500.00
(4) 1975 Chevrolet pickup .................................................. $1,000.00
(5) Increase in Husband's retirement plan ................................. $12,167.00
(6) Increase in Husband's life insurance .................................. $1,058.00
(7) Husband's 401k ........................................................ $9,813.00
(8) Hay bind .............................................................. $2,000.00
(9) Hay rake .............................................................. $700.00

| | | |
|---|---|---:|
| (10) | Riding mower | $100.00 |
| (11) | Tiller | $300.00 |
| (12) | Push mower | $50.00 |
| (13) | Two fishing rods & tackle box | $30.00 |
| (14) | Miscellaneous household possessions | $485.00 |

---

**[Husband's *gross value* of marital property $109,015.00]**

Husband was ordered to pay all marital debts, including: (a) a debt of $1,200.00 to Bank of Seymour for a 1989 Chevrolet pickup truck; (b) debt of $3,200.00 to Seymour Bank and $7,500.00 to Husband's mother for purchase of former wife's (Linda) one half interest in house and one acre (Tract B); (c) Wife's mobile home debt of $6,003.00 owed to Seymour Bank, *infra;* and (d) Cash settlement to Wife of $25,750.00, *infra.*

**[Husband's *net value* of marital property $65,362.00]**

*(65.4% of marital value)*

The judgment contains no provisions awarding Wife any non-marital properties. The trial court awarded Wife the following marital properties:

TO WIFE:

TO WIFE:

| | | |
|---|---|---:|
| 1. | Miscellaneous household possessions | $2,265.00 |
| 2. | 1973 Star Mobile Home, VIN 16GC50454 | $6,000.00 |
| 3. | .32 Marlin Rifle | $350.00 |
| 4. | .50 caliber black powder rifle | $200.00 |
| 5. | Cash Settlement from Husband | $25,750.00 [2] |

---

Wife was ordered to pay none of the parties' marital debt.

**[Wife's *net value* of marital property $34,565.00]**

*(34.6% of marital value)*

### I.

In her first assignment of error, Wife maintains that the trial court erred in awarding Husband Tract A as Husband's sole and separate, non-marital property. Wife contends that the property was "jointly titled in both parties' names" and that Husband failed to rebut the presumption that the house and the totality of the one acre (Tracts A and B) were marital property under Missouri law. We disagree.

We have no quarrel with the proposition that where "separate property is put into the joint names of both spouses it creates a presumption that the property has become marital property." *Waisblum v. Waisblum,* 968 S.W.2d 753, 756 (Mo.App. 1998). "Indeed, the addition of a spouse's name to a document of title of a residence creates a tenancy by the entirety and the property is presumed marital." *Id.*

The record in this matter is devoid, however, of any evidence establishing a conveyance by Husband of his separate property interest in Tract A to himself and Wife, jointly.

Husband and Wife were married in 1986. At that time, Husband already owned Tract A, i.e., the one-half undivided interest in the house and one acre of property that he and his former wife, Linda, previously held as husband and wife, and which Husband received as part of his divorce settlement with

**2.** Terms of the cash settlement: Husband to pay $1,750.00 sixty (60) days from the date of the amended decree and the balance of $24,000.00 to be paid by Husband in eight (8) equal installments of $3,000.00 each, first such installment due one year from date of decree and a like installment due each year thereafter until paid. The trial court found that no interest should accrue on the $25,750.00.

Linda. Husband's former wife, Linda, was awarded the other one-half interest.

"[P]roperty acquired *before the marriage* and which remains titled in the name of the original owner is *separate property* unless the record shows that the owner intended to change the status of the property from separate to marital." *Glenn v. Glenn,* 930 S.W.2d 519, 523 (Mo.App.1996) (quoting *Stottlemyre v. Stottlemyre,* 877 S.W.2d 176, 176–77 (Mo.App.1994)).

The record shows that in 1989 Husband and Wife (Leona) acquired by quitclaim deed all of former wife Linda's one-half interest in the one (1) acre and house, which is described as Tract B, *supra.* However, this conveyance from former wife Linda to Husband and Wife conveyed no more interest than former wife Linda had in the real property. "[O]ne who receives a quitclaim deed acquires only that which the grantor possessed and nothing else." *Reben v. Wilson,* 861 S.W.2d 171, 175 (Mo.App.1993). It is clear then that former wife Linda's conveyance to Husband and Wife was not the entirety of Tracts A and B but only such interest that she may have had in the totality of the property, which, here, was an undivided one-half interest. Nowhere in the record presented for our review have we found any conveyance or conveyances to Husband and Wife of Husband's separate, undivided one-half interest in the one acre of real property and house thereon.

The trial court did not err therefore in classifying Husband's one-half interest in the one acre of real property and house as Husband's separate, non-marital property. Point denied.

## II.

In her second point, Wife maintains that the trial court erred in valuing the 128–acre farm at $60,812.00. She contends that there was no substantial evidence adduced at trial to support such a valuation, particularly in light of the evidence presented by Husband which indicated a valuation of $95,000.00.

A trial court is prohibited from entering a valuation of marital property not supported by any evidence at trial, but the trial court, nonetheless, enjoys broad discretion in valuing marital property. *Brennan v. Brennan,* 955 S.W.2d 779, 782–83 (Mo.App. 1997); *M.A.Z. v. F.J.Z.,* 943 S.W.2d 781, 786–87 (Mo.App.1997).

In determining the value of the 128–acre farm at issue, the trial court found in its amended judgment, as previously noted, that "[t]he house on the farm is subject to a life estate in [Husband's] mother who at the time of divorce was 71 years old. The Court, having observed the [Husband's] mother and age, finds the net value of the farm to be $60,812.00."

Our review of the record in this matter and the general warranty deed to the farm from Husband's parents to Husband, together with the general warranty deed from Husband to Husband and Wife, jointly, shows that only the farm house in which Husband's mother resides is subject to a life estate.[3] Because the trial court so precisely determined the value of the 128–acre farm, i.e., $60,812.00, given the facts of this case, it is reasonable to infer that the trial court relied on sections 442.530 and 442.540, RSMo 1994 (value of life estate table), in assigning the value of Husband's mother's life estate interest in the farm house. It also appears, however, that in assessing the value of the life estate, the trial court erroneously considered the value of the *entire* farm, i.e., $95,000.00, in arriving at its value.

Premised on the assumption that the trial court relied on the life estate table found in section 442.530, the trial court was required to determine the value of Husband's mother's life estate in the farm house and subtract that amount from the value of the entire farm in order to arrive at the correct present value of the entire farm. *See United States v. 818.76 Acres of Land, Etc., State of Missouri,* 310 F.Supp. 210, 212–13 (W.D.Mo. 1969). Husband testified that the value of the farm, acreage and farm house together, was $95,000.00. Wife does not dispute this

3. This "farm house" should not be confused with house and one acre identified and discussed in Point I., *supra.* These are separate properties located in Webster County, Missouri.

figure. Husband also testified that the land on the farm was valued at $500.00 per acre. This produces a value of the 128 acres, without the farm house, of $64,000.00 ($500.00 × 128 acres). Hence, the weight of the evidence suggests that the farm house, alone, has a value of $31,000.00. Following sections 442.530 and 442.540, *supra*, determining the value of the life estate and subtracting that amount from the overall value of the farm, the present value of the 128–acre farm and the farm house is approximately $84,391.00.[4] *See 818.76 Acres, Etc., State of Missouri*, 310 F.Supp. at 212–13.

The difference between the value that the trial court erroneously assigned to the farm ($60,812.00) and the correct value as found by this Court ($84,391.00) is $23,579.00. Thus, we cannot conclude that the trial court's assigned value of the farm was within the range of the evidence. *See In re Marriage of Stephens*, 954 S.W.2d 672, 675 (Mo. App.1997) (trial court required to value marital property within the range of the evidence presented). We must hold therefore that the trial court's valuation of the 128–acre farm and the farm house was not supported by the evidence and accordingly must be modified. *See 818.76 Acres, Etc., State of Missouri*, 310 F.Supp. at 212–13; *Brennan*, 955 S.W.2d at 782–83; *see also White v. Greenway*, 274 S.W. 486, 488–89 (Mo.App.1925). Point granted.

### III.

■ In her third point, Wife maintains that the "trial court erred in failing to award, or adduce any evidence concerning several calves and cattle which were marital property....." She contends that the "undisputed testimony at trial was that during the marriage, [Husband] received one-half of all of the calves from the cattle on the property."

We determine that Wife's third point is without merit. The only evidence in the record concerning ownership of the calves and cattle located on the farm came from Husband's mother, Mrs. Alvina Kirkham.

She testified on direct examination as follows:

Q. Does [Husband] own any interest in these cows?

A. Not any interest in it except that I've let him have half the calf check while my— After my husband got sick we let him have half the calf check. And then when my husband passed away we let him have all— *I let him have all of it for taking care of everything for me.*

Q. Okay. Has [Husband] ever owned a cow herd or any part of it?

A. No.

(emphasis added).

We also note a brief colloquy between Mrs. Alvina Kirkham and Wife's counsel during cross-examination:

Q. How did you know which cattle were yours and which cattle were [Husband] and [Wife's] when you look out at the cattle?

A. Well, all the cows are mine. Just— [Husband] just got half of the check.

\* \* \* \*

■ Contrary to Wife's argument, there is no "undisputed testimony" in the record of this matter to suggest that Husband nor Wife possessed an ownership interest in any cattle located on the farm. Further, as heretofore mentioned, the trial court is free to believe or disbelieve the testimony of any witness. *Coleberd v. Coleberd*, 933 S.W.2d 863, 867 (Mo.App.1996). Any conflicts in testimony are for the trial court to resolve, and issues concerning credibility of witnesses are not eligible for appellate review. *See id.*

■ Notably, Wife failed to direct this Court to any testimony or evidence in the record to support her point relied on. "[I]t is not the duty of an appellate court to seine the record in order to discover, if possible, error by the trial court; it is the duty of an appellant to distinctly point out the alleged errors and where they can be found in the record." *Bowls v. Scarborough*, 950 S.W.2d

---

4. $31,000.00 (farm house value) × 6% = 1,860 × 5.704 (age 71) = $10,609.00 (present value of Husband's mother's life estate). *See* §§ 442.530, 442.540, RSMo 1994.

$95,000.00 (value of entire farm)—$10,609.00 (life estate value) = $84,391.00. *See id.*

691, 703 (Mo.App.1997). The trial court's decision relating to the cattle located on the farm is not against the weight of the evidence. *See Crews,* 949 S.W.2d at 663. Point denied.

### IV.

In her fourth point, Wife contends that the trial court erred in its disposition of the entire marital estate because such division was against the clear weight of the evidence and was an abuse of discretion. She contends that "the entirety of the award is so one-sided in favor of [Husband] as to have no rational basis in the evidence." We agree.

"Section 452.330.1 gives the trial court great flexibility and far-reaching power to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider." *Waisblum,* 968 S.W.2d at 756. "The [trial] court is only required to make a fair and equitable division of property." *Id.*

Although a "trial court is not required to make an equal division of marital property, but only a just division," *Gremaud v. Gremaud,* 860 S.W.2d 354, 357 (Mo.App.1993), we nonetheless conclude that the trial court's division of property in the instant matter was "clearly wrong." *See Waisblum,* 968 S.W.2d at 757.

As set forth, *supra,* the trial court awarded Husband 65.4% of the marital assets and awarded Wife 34.6% of the marital assets.[5] The trial court's erroneous valuation of the 128–acre farm, Point II., *supra,* exacerbates the disparity in the trial court's marital property division between Husband and Wife. The division of property in this case is so heavily and unduly weighted in favor of Husband as to amount to an abuse of discretion. *See, e.g., Waisblum,* 968 S.W.2d at 757.

We acknowledge that there was evidence adduced at trial to support the trial court's finding that "Husband was the primary source of the acquisition of the parties'

marital property. . . ." Nevertheless, it has been repeatedly held, and this Court agrees, that the trial court should carefully consider each spouse's respective contribution to the acquisition and increase in value of marital assets in arriving at a just division. *See Waisblum,* 968 S.W.2d at 756–57; *M.A.Z.,* 943 S.W.2d at 787; *Gremaud,* 860 S.W.2d at 357; *Hylton v. Hylton,* 716 S.W.2d 850, 852–53 (Mo.App.1986); *see also* § 452.330.1(2), RSMo 1994. While there is little evidence in the record showing a specific dollar increase in the value of the marital property resulting from either spouse's efforts, we do not ignore the evidence, largely undisputed by Husband, that Wife contributed to the day-to-day duties, including up-keep and maintenance, of the 128–acre farm.

Additionally, another factor that controls our disposition of Wife's fourth point is the balance between the distribution of income and non-income producing marital assets. *See Held v. Held,* 896 S.W.2d 709, 712 (Mo.App.1995). This balance is weighted entirely in favor of Husband. The trial court awarded to Husband all of the income-producing assets, most notably, the 128–acre farm, the entirety of Husband's 401k plan, and a life insurance policy. Wife was awarded only a 25–year–old mobile home, two weapons, her household possessions, and a cash payment of $25,750.00, to be paid by Husband over an eight-year period, with no interest.

In light of the record before this Court, the division of marital assets is palpably unjust and unduly weighted in favor of Husband, and, accordingly, requires modification. *See Waisblum,* 968 S.W.2d at 757; *In re Marriage of Gilmore,* 943 S.W.2d 866, 876–77 (Mo.App.1997). Point granted.

### V.

In her final point, Wife maintains that the trial court erred in its decision to deny a maintenance award to Wife.

We review Wife's final point under an abuse of discretion standard. *See Crews,* 949 S.W.2d at 663; *see also* § 452.335, RSMo

---

5. This percentage disparity is not considered a *per se* abuse of discretion. *See In Re Marriage of*

*Jennings,* 910 S.W.2d 760, 765–66 (Mo.App. 1995).

1994. The evidence is viewed favorable to the judgment and we disregard evidence to the contrary. *Id.* We will defer to the trial court's decision even if the evidence could support a different conclusion. *Id.*

 We observe that Wife presented virtually no evidence at trial regarding her reasonable needs. "Under § 452.335.1 a party must prove need before maintenance can be awarded." *Buerge v. Buerge,* 935 S.W.2d 390, 392 (Mo.App.1996). "A mere request for maintenance is insufficient to support a maintenance award." *Id.*

The record in the instant matter contains insufficient evidence to support a finding that the trial court abused its discretion in denying a maintenance award to wife. *See Buerge,* 935 S.W.2d at 392. Point denied.

In the interest of laying litigation to rest, Rule 84.14 permits the appellate court to give judgment as the trial court ought to have given under the circumstances. *See* Rule 84.14, Missouri Court Rules (1998); *Burkhart v. Burkhart,* 876 S.W.2d 675, 680 (Mo. App.1994). In light of our determination that the trial court in this case erred in placing a value on the 128–acre farm and in its overall distribution of marital assets, we modify the trial court's amended judgment by ordering Husband to pay to Wife an additional lump sum payment of $12,500.00 within ninety (90) days from the date of this Court's mandate. *See id.* The remainder of the trial court's judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.