**Terri Gail POOLE, Respondent,**

v.

**Gary Wayne POOLE, Appellant.**

**No. 22043.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1998.

King E. Sidwell, Blanton, Rice, Sidwell & Nickell, L.L.C., for appellant.

Michael B. Hazel, Stefanie S. Pearlman, Caruthersville, for respondent.

MONTGOMERY, Judge.

Gary Wayne Poole (Father) appeals from a decree dissolving his marriage to Terri Gail Poole (Mother). Father claims the trial court erred in (1) ordering him to pay Mother $1200 monthly child support, (2) restricting his visitation rights, (3) dividing the marital property based on values fixed over one year prior to the date of the judgment, and (4) dividing the marital property by allocating 70 percent of the property to Mother and 30 percent of the property to him.

The parties married on May 24, 1970, and separated in March of 1996. Five children were born of the marriage with their birthdays beginning on March 29, 1981, and ending on April 4, 1996. The court awarded Mother "care, custody and control" of the children and gave Father substantial visitation rights. The decree then recites that "[t]his visitation is restricted in the sense that it shall take place at [Father's] parent's [sic] home in the presence of his mother."

Following the $1200 monthly child support award to Mother, the decree states that

"[t]he court specifically finds pursuant to Rule 88.01, the amount of child support calculated pursuant to Civil Procedural [sic] Form No. 14 is unjust or inappropriate."

■ Father's first point asserts that the award of $1200 monthly child support was erroneous because the trial court did not accept or reject the parties' proposed Form 14 calculations, did not find on the record the presumed correct child support amount, and did not state on the record how the court calculated a presumed correct child support award.

At trial, both parties presented the trial court with a "Form 14."[1] Father's Form 14 calculated his presumed child support amount at $951 monthly. Mother's Form 14 calculated Father's presumed child support amount at $1019 monthly. However, the trial court ignored the parties' Form 14 calculations and entered a child support award of $1200. The decree and record are silent as to why the trial court deviated from the parties' Form 14 calculations. The trial court did not determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation. Implicitly, the trial court found an unspecified amount of child support to be unjust and inappropriate.

These circumstances are like those found in *Neal v. Neal,* 941 S.W.2d 501 (Mo. banc 1997), where the decree simply stated that "Form 14 is not applicable in this case due to Respondent's other debts." *Id.* at 504. Based on *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App.1996), the Supreme Court reversed the child support award because the trial court did not find for the record the presumed correct child support amount calculated pursuant to Form 14. *Neal,* 941 S.W.2d at 504. The Court said that "[m]eaningful appellate review is, therefore, not possible, either to determine the presumed correct child support amount or to determine whether the trial court's attempt

to rebut any child support amount calculated pursuant to Form 14 was proper. The inadequacy of the record in these respects requires reversal." *Id.* On remand, the Court instructed the trial court to follow the directives of *Woolridge.*

*Woolridge* sets forth a thorough explanation of the requirements of Rule 88.01 and Form 14 and provides step-by-step guidance for trial courts in applying the rule and using the form. *Woolridge* explains the difference between "rejecting" a Form 14 incorrectly calculated and "rebutting" the presumed child support amount calculated pursuant to Form 14 as being unjust or inappropriate. 915 S.W.2d at 378–79.[2] Repeating that explanation is not necessary in this opinion.

Here, the trial court did not find for the record the presumed correct child support amount calculated pursuant to Form 14. Therefore, meaningful appellate review is not possible. Based on the record presented, we cannot determine the presumed correct child support amount or determine whether the trial court properly rebutted any child support amount calculated pursuant to Form 14.

Father's point is well taken. Thus, the child support award must be reversed and the cause remanded for further proceedings in compliance with *Woolridge.*

Father's next point alleges the trial court erred by restricting his visitation rights to the home of his parents and in the presence of his mother without a finding that unrestricted visitation would endanger the children's physical health or impair their emotional development. The trial court's decree provides for visitation as follows:

(b) IT IS FURTHER ORDERED AND ADJUDGED by the Court that [Mother] have the care, custody and control of the parties' minor children ... and that [Father] is given the right and privilege of seeing said minor children for three hours on the evenings of Mondays, Wednesdays and Fridays, and for three two week peri-

---

1. Civil Procedure Form No. 14. Presumed Child Support Amount Calculation Worksheet. Missouri Court Rules (1998). Rule references herein are to that version.

2. From the sole fact the trial court deviates from the submitted Form 14 calculations, as in the instant case, the appellate court cannot assume the amount of child support awarded resulted from "rejection" or "rebuttal." *Woolridge,* 915 S.W.2d at 380.

ods during the summer months to coincide with his vacation, in the event he takes a vacation, and a reasonable period of time on holidays, the children's birthdays, and on Father's Day;

(c) This visitation is restricted in the sense that it shall take place at [Father's] parent's [sic] home in the presence of his mother[.]

The original grant of visitation rights to a noncustodial parent is governed by § 452.400.1.[3] *J.L.S. v. D.K.S.*, 943 S.W.2d 766, 772 (Mo.App.1997). That subsection provides, in pertinent part:

A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development.... The court shall consider the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons and shall grant visitation in a manner that best protects the child and the parent....

Mother does not dispute that Father's visitation was "restricted" nor that the trial court failed to specifically find endangerment of the children's physical health or impairment of their emotional development.

Both parties principally rely on *Parker v. Parker*, 918 S.W.2d 299 (Mo.App.1996), where the court stated that "[t]his court has affirmed implicit findings of physical endangerment and impairment of emotional development although no express finding was made. In these cases, we found the great weight of the evidence in the record supported the court's implicit finding." *Id.* at 300 (citations omitted).

Mother and Father disagree on whether the *great weight* of the evidence in the record

supports the trial court's implicit finding. In our view, it does not do so.

■ Here, there was no evidence of physical abuse or harm to the children. Mother points to no evidence showing that Father's activities had any affect on the children. Under these same circumstances, reversal was required in *Parker*, and the case was remanded for reconsideration of the noncustodial parent's visitation rights. *Id.* at 300. Following *Parker*, we determine that Father's second point is well taken. Reversal is necessary as to that portion of the judgment restricting Father's visitation rights. However, reconsideration of his visitation rights on remand is unnecessary in view of Mother's direct examination testimony requesting that the court give Father "reasonable rights of visitation with the children."

Father's third point asserts trial court error in valuing the marital property "based upon values fixed in excess of one (1) year before the date of the judgment" because the court is required "to consider the economic circumstances of each spouse at the time the division of property becomes effective."

According to Father, a substantial portion of the marital property consisted of shares of stock which were subject to an ever changing value. Father complains that the trial court set aside to Mother "stocks and bonds totaling $58,592.10 based upon stale valuations." Father acknowledges in his brief that each party presented evidence as to the most recent valuations available before the date of trial.

This case was tried on February 26, 1997, and taken under advisement at that time. The trial court entered its "Judgment and Decree of Dissolution of Marriage" on November 14, 1997. The docket sheet shows no activity between these two dates.[4]

As we understand part of Father's complaint, Mother received income from almost

---

3. Statutory references are to RSMo 1994 unless otherwise indicated.

4. We feel compelled to acknowledge our discomfort with an almost nine-month delay in this case between trial and entry of judgment. Although valid reasons may exist for the delay, the record shows none in this case. Parties in a domestic

relations case usually experience an anguish that should be put to rest promptly. In *In re Marriage of Short*, 847 S.W.2d 158, 163 n. 3 (Mo.App. 1993), this Court observed that a long delay in deciding a dissolution of marriage case does "little to enhance public confidence (if any) in the judiciary."

$60,000 in stocks and bonds pending the decision of the trial court. However, he leaves this Court to speculate on the amount of income Mother received but claims he was prejudiced thereby. Additionally, Father's argument is devoid of any suggestion that the value of the stocks and bonds awarded to Mother had substantially changed between February and November.

Father's reliance on *In re Marriage of Gustin*, 861 S.W.2d 639 (Mo.App.1993), is misplaced. There, the trial court valued stock based on a February 1991 valuation. The trial concluded in April 1991, and the court entered judgment in October 1991 at which time the division of property became effective. *Id.* at 643. Between February and October 1991 the stock value increased by over $2,000,000. On appeal, the division of property was reversed because the trial court failed to follow the mandate of § 452.330.1(1). That statute directs the court to divide the marital property in such proportions as the court deems just after considering all relevant factors including the economic circumstances of each spouse at the time the division of property is to become effective. The division in *Gustin* became effective in October 1991, but the trial court's division of property ignored an increase of over $2,000,000 in the value of the parties' principal asset. *Id.*

*L.J.B. v. L.W.B.*, 921 S.W.2d 23 (Mo.App. 1996), explains why *Gustin* is inapplicable to Father's complaint. In *L.J.B.*, husband complained the division of property was based on stale financial information because the decree was entered fifteen months after trial. His complaint lacked merit because husband failed to show he was prejudiced by the failure of the trial court to reevaluate the parties' financial circumstances. *Id.* at 27. The appellate court observed that husband did not specify any property which had "changed drastically in value" between the date of trial and entry of the decree. *Id.* He did not claim that either his or wife's financial situation had "changed substantially" during that same period of time. *Id.*

The circumstances here are almost identical to those in *L.J.B.*. For that reason, we deny Father's third point for his failure to show how he was prejudiced by the trial court valuing the stocks and bonds as of date of trial.

Father's last point states that the trial court erred and abused its discretion in dividing the marital property 70 percent to Mother and 30 percent to him in that the law requires a fair and equitable division of such property.[5] Father claims that "there were no statutory or non-statutory factors which mandated a departure from the generally accepted principle that the division should be in substantially equal shares."

The standard for appellate review of a court-tried case is found in Rule 73.01(c), as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. Under this standard of review, considerable deference is accorded judgments based on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App.1992).

"A trial court is vested with considerable discretion in dividing marital property; an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Box*, 968 S.W.2d 161, 169 (Mo.App.1998). Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion. *Id.*

"'Section 452.330.1 gives the trial court great flexibility and far-reaching power

5. According to Appendix "A" attached to Father's brief, he received marital property worth $44,444.46, and Mother received property worth $104,394.68. Included in the latter amount is the equity of almost $30,000 in the marital home awarded to Mother.

to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider.'" *Waisblum v. Waisblum,* 968 S.W.2d 753, 756 (Mo.App. 1998) (quoting *Crews v. Crews,* 949 S.W.2d 659, 664 (Mo.App.1997)). A trial court is only required to make a fair and equitable division of property. *Id.*

Section 452.330.1 provides, in pertinent part:

1. In a proceeding for dissolution of the marriage or legal separation ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective ...;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage;

(5) Custodial arrangements for minor children.

■ The fact that the trial court awards considerably more property to one spouse than the other is not *per se* an abuse of discretion. *In re Marriage of Jennings,* 910 S.W.2d 760, 765 (Mo.App.1995).

Disproportionate divisions of marital property have been affirmed on appeal. *See Whaley v. Whaley,* 805 S.W.2d [681, 682 (Mo.App. E.D.1990) ] (65%–35%); *Hayes v. Hayes,* 792 S.W.2d [428, 429 (Mo.App. S.D. 1990) ] (74%–26%); *Dove v. Dove,* 773 S.W.2d [871, 872 (Mo.App. W.D.1989) ] (90.5%–9.5%); *Buchheit v. Buchheit,* 768 S.W.2d 641, 642 (Mo.App. E.D.1989) (75%– 25%); *Mika v. Mika,* 728 S.W.2d 280, 283 (Mo.App. E.D.1987) (84%–16%); *Arp v. Arp,* 572 S.W.2d 232, 235 (Mo.App. W.D. 1978) (72%–28%); *In re Marriage of Bur-*

*ris,* 557 S.W.2d 917, 918 (Mo.App. W.D. 1977) (88%–12%).

*Id.* at 765–66.

■ In this case, substantial evidence supports the division of marital property. During this lengthy marriage of over twenty-six years, Mother was not employed outside the home for the last sixteen years of the marriage due to caring for the parties' five children. As to the parties' conduct, Father admitted that he engaged in an adulterous affair with a co-worker and further admitted, apparently in recognition of Mother's valuable contribution as a homemaker, that she had been a good wife for twenty-six years. Mother also testified that Father physically abused her on several occasions. Finally, Mother received primary physical custody of the five minor children which suggests that the marital home was appropriately awarded to her. All of these factors favor Mother's award of marital property. Based on these considerations, we cannot say that the trial court abused its discretion in the division of marital property. Point IV lacks merit.

All portions of the decree pertaining to child support and to restrictions on Father's visitation rights are reversed, and the case is remanded for further proceedings. Upon remand, the trial court shall (1) award child support in compliance with this opinion and *Woolridge,* 915 S.W.2d at 377–83, and (2) amend its judgment by eliminating any restriction on Father's visitation rights. All other provisions of the decree are affirmed.

SHRUM, P.J., and GARRISON, C.J., concur.