**Debra Denise YOUNGBERG,
Petitioner–Appellant,**

v.

**Lynn Eugene YOUNGBERG,
Respondent–Respondent.**

No. 26707.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 2006.

Randy J. Reichard, Lowther Johnson Attorneys At Law, LLC, Springfield, for Appellant.

Joseph D. Woodcock, Aurora, for Respondent.

PHILLIP R. GARRISON, Judge.

Debra Denise Youngberg ("Wife") appeals from a judgment dissolving her marriage to Lynn Eugene Youngberg ("Husband"). Wife contends that the trial court erred in dividing the marital property and debts, denying her maintenance, failing to recuse itself because of an appearance of impropriety, and in determining the amount of child support to be paid because of an error in calculating Husband's income.

Husband and Wife were married on February 7, 1992. Two children were born of the marriage: Lynnsey Jean Youngberg, born November 4, 1993, and Jessica Lynn Youngberg, born March 2, 1997. Wife had lived on and operated a 160 acre farm, ("the property") since 1982.[1] When Husband moved in with Wife he was self-employed in the business of "order buying," which consisted of taking farm equipment orders from customers and purchasing the equipment at auctions and sales. In time, Husband's business evolved from "order buying" into a salvage business ("the business"), which the parties ran on the property and which, within a couple of years after the marriage, took the place of the farming business as the parties' primary source of income. Husband ran the business, while Wife assisted in loading and unloading the parts, answering the telephone, and helping customers.

The parties separated on or about February 19, 2003, and Wife filed her petition for dissolution of marriage on March 10, 2003. At the trial, the court received in evidence a report from Jerry Glor ("Glor"), appointed by it to appraise the business. He valued the real property at $240,000, the inventory at $211,846, and he also assigned a "business value" of $50,000 to the business. The trial court entered its judgment from which Wife brings this appeal. In its judgment, the trial court denied Wife maintenance, awarded her child support and divided the marital property and debts. In doing so it held:

1. Wife inherited the property from her late husband, Randy Weldy. In 1997, the property was purchased by Bill Bradley ("Bradley"), Husband's cousin, however, Husband and Wife continued to live on, and operate the business from the property. In 2003, Husband and Wife purchased the property from Bradley. There is no dispute that the real estate is marital property.

[A]s set forth in [Husband's] Exhibit 5 ... [Wife] is awarded $8,000 in personal property and [Husband] is awarded $491,725[ ] in marital real estate and personal property.[2] [Husband] is further ordered to pay the marital debts and accounts payable ... totaling $473,681.[3] Judgment is entered in favor of [Wife] and against [Husband] for one-half of the difference in the sum of $5,022[ ]. The Court further awards [Wife] judgment against [Husband] in the sum of $5,000[ ] so that she can update her motor vehicle.

■ We will affirm a trial court's dissolution decree unless it is not supported by substantial evidence, is against the weight of the evidence, or it erroneously declared or applied the law. *In re Marriage of Michel*, 142 S.W.3d 912, 917 (Mo. App. S.D.2004). In conducting this review we view the evidence in the light most favorable to the decree. Id. at 918. Furthermore, we defer to the trial court regarding credibility determinations and assigning weight to witness testimony. *Long v. Long*, 135 S.W.3d 538, 542 (Mo. App. S.D.2004). The trial court is free to believe all, none, or part of the testimony of any witness. *Id.*

## POINT I

Wife first argues that the trial court's division of property was unjust in that (A) the court failed to place a value on the business other than for the inventory and real estate; (B) the inventory of the business was undervalued; (C) a debt attrib-

2. This includes the property, the business and home located thereon.

3. This includes all the marital debt, including a $97,671 loan on the property.

uted to Husband was not legitimate or was overstated; (D) one debt, amounting to $16,000, was counted twice in Husband's favor; and (E) these errors prejudiced Wife.

The trial court has broad discretion in identifying, assigning value to and dividing marital property. *Long,* 135 S.W.3d at 542. We will only disturb the court's judgment if its decision "is so unduly weighted in favor of one party that it amounts to an abuse of discretion." Id. An abuse of discretion only occurs when the judgment is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." Id. (quoting *In re Marriage of Holden,* 81 S.W.3d 217, 225 (Mo. App. S.D.2002)).

### Failure to Place a Value on the Business other than on the Inventory and Real Estate

Wife argues that the trial court erred in failing to include a $50,000 "business value" (or value of the business as a going concern) in its determination of the overall value of the business, because Glor's appraisal included that amount. However, the trial court did not adopt the appraisal as a whole, rather it only discussed and adopted the appraisal regarding the value of the real estate and inventory. The trial court did not discuss "business value" in its judgment. We presume that the trial court "considered the relevant factors and evidence and determined the facts in accordance with the judgment." *Greiner v. Greiner,* 146 S.W.3d 442, 452 (Mo.App. W.D.2004); *see also* Rule 73.01(c).[4]

**4.** All references to rules are to Missouri Rules of Civil Procedure (2004) unless otherwise

In this case, Husband testified about changes in the agricultural community and the diminished profitability of the salvage business.. He also discussed environmental problems caused by the storage of old farm equipment including oil and grease leaks as well as leaking batteries. The trial court could have concluded from this testimony that the business had no value outside of the real estate and inventory. An owner's testimony is competent evidence of value. *In re Marriage of Denton,* 169 S.W.3d 604, 609 (Mo.App. S.D. 2005).

Wife argues that since Glor's appraisal included a "business value" of $50,000, and the trial court used that appraisal's valuations as to the real estate and the inventory of the business in its division of marital property, it should have also included the $50,000. Whether the business had any value outside the real estate and inventory is strictly a question of fact, depending largely upon the trial court's view of the testimony, which it was free to believe in full, in part or not at all. *Long,* 135 S.W.3d at 542. As noted above, we defer to the trial court's determinations as to witness credibility. *Id.* Therefore, this portion of Point I is denied.

### Husband's Debt to His Father

Both Husband and his father testified that Husband owed his father $104,186. There was also testimony that at one time the outstanding amount due on the loan was nearly double that amount, but Husband had been repaying his father over a period of years. In addition, Father kept detailed records of the debts Husband owed and the payments he had made, which were received in evidence. This was

indicated.

sufficient evidence, if believed by the trial court, to demonstrate a valid debt. *See In re Marriage of Elliott,* 179 S.W.3d 323, 326 (Mo.App. S.D.2005) (testimony by both husband and his mother that payments made by her to the parties totaling $150,236, and the checks she wrote to husband were sufficient evidence to support trial court finding there was a bona fide loan made to the marriage).

█ Wife argues that because there was no promissory note, and because neither Husband nor his father were aware of the total amount owed until a few days before trial, there was not substantial evidence of a bona fide loan. While, the trial court may have been justified in agreeing with Wife, this evidence does not compel it to do so and Wife fails to cite any case that holds otherwise, or explain the absence of such authority. Whether a debt is considered a gift or a bona fide loan to the marriage is "purely a question of fact, depending for the most part on the credibility of the witnesses." *In re Marriage of Michel,* 142 S.W.3d at 922 (quoting *Cole v. Cole,* 633 S.W.2d 263, 265 (Mo.App. W.D. 1982)). Because we defer to the trial court's determinations as to the credibility of the witnesses, this portion of Point I is also denied.

### The Value Placed on the Inventory

Wife argues, and Husband concedes, that the trial court erred in failing to include $4,450 worth of inventory in its valuation of the business assets. Husband agrees that he purchased two Peterbuilt trucks for $3,500 each, a mower at $250, and a grain bed at $200 prior to trial, which were not included as inventory owned by the business in Glor's appraisal. Both parties also agree that "a dozer" was sold for $3,000, which was included in Glor's inventory appraisal prior to trial. They also agree that these changes to the

inventory demonstrate that the trial court undervalued the business by $4,450. Wife correctly points out that property is to be valued as of the date of trial. *Elrod v. Elrod,* 144 S.W.3d 373, 379 (Mo.App. S.D. 2004). Therefore, we understand both parties to agree that $4,450 should be added to the value of the business' inventory.

In addition, Wife argues that the appraisal failed to account for "two torch carts and three semi-trailers," which she videotaped on the property at the time the parties separated in March 2003. Although that videotape was admitted as evidence and played at trial, Wife testified that she did not know what happened to the two torch carts and that while the three semi-trailers were present in the video they were not included in the appraisal.

Husband points out that no other evidence was presented to suggest that those items that were present in the videotape in March 2003 were still part of the businesses inventory when Glor conducted his appraisal in June 2004. However, Husband did testify that, other than the items (discussed above) he conceded were purchased by the business after Glor conducted his appraisal, everything owned by the business at trial was included in that appraisal. Husband and Wife presented the trial court with differing accounts regarding the accuracy of Glor's inventory appraisal, either of which the trial court was free to believe entirely, partially or not at all. *See Long,* 135 S.W.3d at 542. Therefore, given our standard of review, we cannot say that trial court abused its discretion by giving more credence to Husband's testimony regarding the inventory than it did to Wife's.

Wife also argues that the value assigned by the trial court was understated in that previous financial statements filled out by Husband placed higher values on the busi-

ness' inventory. However, as Wife points out, the trial court clearly adopted the appraisal of the inventory valuing it at $212,000. This falls within the range of values in evidence, and therefore, does not represent an abuse of discretion. *See Brennan v. Brennan*, 955 S.W.2d 779, 783 (Mo.App. E.D.1997). Other than those points conceded by Husband, we see no abuse of discretion in the trial court's decision to adopt the appraisal's view of the value of the business' inventory.

### The $16,000 Debt

Wife argues, and Husband concedes, that the trial court erred in giving him credit for a $16,000 debt twice. The evidence indicates that there were two debts owing which totaled $16,000: i.e. one to Shawn Cogley in the amount of $9,500, and one to Colfax Tractor Parts in the amount of $6,500. In its judgment, the trial court subtracted $16,000 from the business' accounts receivable, and it also increased the debt set over to Husband by including the two debts totaling $16,000.

Husband testified that he was to pay "Cogley and Colfax" $9,500 and $6,500 respectively, out of his accounts receivable for tractors he had purchased from them. More specifically, Husband stated that he recently sold those tractors, and that when he collected the payments from those sales, he intended to pay his debts to "Cogley and Colfax."

It seems that based upon this testimony the trial court deducted $16,000 from the business' accounts receivable to reflect these prospective payments to "Cogley and Colfax." However, as Husband concedes, the court's judgment did not reflect that

the debts to "Cogley and Colfax" had already been accounted for because the court also included both debts as part of the marital debts it set over to Husband. Therefore, Husband concedes that the trial court counted the same debt twice, in effect adding $16,000 to his net share of the marital property.

### Prejudice

■ Wife correctly points out that Section 452.330 [5] mandates that the trial court make a just division of the marital property. It is also true that there is a generally accepted, but rarely explained principle that the division should be substantially equal unless one or more of the factors delineated in the statute causes such a division of property to be unjust. *See In re Marriage of Hash*, 838 S.W.2d 455, 459 (Mo.App. S.D.1992). It is evident from its judgment that the trial court was attempting to distribute the marital property equally, however, as a result of the errors described above, the judgment favored Husband as he was actually awarded $38,499 [6] in marital property, while Wife was only awarded $13,022 ($8,000 in marital property, plus the $5,022 judgment she was awarded to equalize the property distribution). Accordingly, in order to achieve its apparent goal of making a substantially equal division of property, the trial court should have added $4,450 to its valuation of the business' inventory and reduced the debt allocated to Husband by $16,000.

By our calculation, following the formula explained by the trial court in its judgment, when the $4,450 is added to the inventory of the business, the total marital

---

**5.** All references to statutes are to RSMo (2000) unless otherwise indicated.

**6.** When $16,000 is subtracted from the marital debt awarded to Husband and after $4,450

is added to the business' inventory, Husband's net marital property award is actually $38,499.

property assigned to Husband is $496,180. After the debt assigned to Husband is adjusted to reflect the $16,000 debt only once, the total debt assigned to Husband equals $457,681. After subtracting this figure from $496,180, (the value of the marital property assigned to him) Husband is left with $38,499 in marital property while Wife's award remains $8,000. The trial court ordered Husband to pay Wife "one-half of the difference" between their respective awards, which now would equal $15,249.50. This would essentially equalize the property each party is to receive under the trial court's judgment. Given the clear intention of the trial court to distribute the property equally, the portion of the judgment dividing the marital property must be reversed.

## POINT II

In her second point, Wife argues the trial court erred in not awarding her maintenance in that she demonstrated she was unable to meet her reasonable needs and that Husband had the ability to pay. Just as it does with the division of marital property, the trial court has broad discretion in determining whether or not to award maintenance. *In re Marriage of Kirkham*, 975 S.W.2d 500, 502 (Mo.App. S.D.1998). We will affirm the trial court's decision unless it is not supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law. *Barton v. Barton*, 157 S.W.3d 762, 765 (Mo.App. E.D.2005). We view the evidence in the light most favorable to the decree, "disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Kirkham*, 975 S.W.2d at 502 (quoting *Crews v. Crews*, 949 S.W.2d 659, 663 (Mo.App. W.D.1997)).

Maintenance awards are governed by Section 452.335, which states, in pertinent part:

[T]he court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to [her], to provide for [her] reasonable needs; and

(2) Is unable to support [her]self through appropriate employment.

In determining whether to grant maintenance, the trial court must "consider the reasonable needs of the spouse seeking maintenance and then decide whether the spouse is able to meet those needs 'through use of marital property or appropriate employment.'" *Barton*, 157 S.W.3d at 766 (quoting *Breihan v. Breihan*, 73 S.W.3d 771, 774 (Mo.App. E.D.2002)).

The trial court did not make any specific findings as to Wife's reasonable needs. The only evidence of Wife's needs was her affirmative reply when asked if she was "coming up about $580 short" each month, and her income and expense statement, which also noted a $580 per month shortfall. The income and expense statement Wife introduced into evidence showed a total of $2,767 in monthly expenses, including $590 per month for food, clothing, and other expenses for the children, and $200 per month for child care. Here Wife was awarded child support of $704 per month. After deducting the expenses specifically incurred for the children, Wife's total expenses are $1,977 per month. *See In re Marriage of Neu*, 167 S.W.3d 791, 796 (Mo.App. E.D.2005) (in determining a spouse's need for maintenance the trial court is not to consider any amounts expended for the direct care and support of a dependant child). This includes such expenses as $356 per month for utilities, $350 per month for expenses related to Wife's car, which was in a dilapidated condition,

$86 per month in charitable contributions to Wife's church, $100 per month for care of the children's two horses, and $150 per month for "[s]undries." As has been noted, the trial court is free to believe all, none or part of Wife's testimony, even if it is not contradicted. *In re Marriage of Cranor*, 78 S.W.3d 150, 157 (Mo.App. S.D. 2002).

Moving to the next step of the analysis, the trial court declined to grant Wife maintenance because it found that between her property, including that apportioned to her, and her reasonable employment, she was able to meet her reasonable needs. The court expressly considered the factors in Section 452.335.2, stating:

> [Wife] has had appropriate full time employment since the year 2001, earning $14,000[ ]—$16,000[ ] per year. The parties established a very modest standard of living during the marriage. [Husband] will be obligated to pay a significant amount of the marital debt, including both personal and business debt. The Court has further considered the income and expense statements submitted as exhibits by the parties and finds that [Husband] does not have the ability to meet his needs and at the [same time] meet the express [sic] needs of [Wife].[7]

The trial court also awarded Wife, $8,000 in personal property and $5,000 cash to update the vehicle that was awarded to her. Furthermore, Wife was also awarded one-half of the difference between the total value of the marital property awarded to Husband and her, which equaled $5,022. As indicated earlier, that figure will now be $15,249.50.

Wife argues that the trial court erred in denying maintenance because her reasonable needs as calculated on her income and expense statement together with the trial court's determination as to her income, leave her with a deficiency of $580 each month. However, Wife cites to no cases, nor explains the absence of such, that hold that a trial court abuses its discretion in denying maintenance under these circumstances.

Prior to the marriage, Wife ran the property, which after the marriage ceased being an operating farm and became home to the parties' business. Wife testified that she now earns $8.50 per hour working in a flower shop approximately thirty-five hours per week, totaling approximately $14,000 per year after taxes. Husband attributed $1,326 per month (which would total $15,912 per year) in income to Wife on his Form 14, which the trial court adopted. Furthermore, as noted above the trial court stated that Wife earns between $14,000 and $16,000 per year.

Section 452.335.1 allows the court to award maintenance if its requirements are met, but it does not mandate such. This has been viewed as granting trial courts broad discretion in determining whether or not to award maintenance. *See In re Marriage of Kirkham*, 975 S.W.2d at 502. Wife is physically and mentally capable of holding gainful employment and, in fact, had been doing so since the parties separated. Based upon this record and in light of our standard of review, we cannot say that the trial court's denial of maintenance was "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock

---

**7.** We note that it appears the trial court improperly employed Section 452.335.2's factors in denying Wife maintenance, as they only apply in determining the amount and duration of the award. *See Barton*, 157 S.W.3d at 768. However, this error does not affect the outcome as a review of the record supports the trial court's decision that Wife was able to meet her reasonable needs.

one's sense of justice and indicate a lack of careful consideration." *Long*, 135 S.W.3d at 542 (quoting *In re Marriage of Holden*, 81 S.W.3d at 225). Accordingly, Point II is denied.

## POINT III

■ Next Wife contends that the trial court erred in failing to recuse itself, sua sponte, from the parties dissolution proceeding. Wife relies upon Rule 2.03, Canon 2,[8] which states that "[a] judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities."

■ Although Wife did not raise this matter before the trial court by way of objection or a pretrial application for a change of judge, we nonetheless consider Wife's point. *See In re Marriage of Burroughs*, 691 S.W.2d 470, 473 (Mo.App. E.D. 1985). Rule 2.03, Canon 3 E(1) states in pertinent part:

A judge shall recuse in a proceeding in which the judge's impartiality might reasonably be questioned.[9]

■ Our review of a judge's decision regarding recusal begins with the presumption that he has acted with honesty and integrity and did not "undertake to

preside in a trial in which the judge [could not] be impartial." *Smulls v. State*, 10 S.W.3d 497, 499 (Mo. banc 2000). Under the code this presumption is rebutted when "there is actual bias and prejudice, or an appearance of impropriety." *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 246 (Mo.App. W.D.1999).

■ The only argument Wife made that could be construed as alleging bias or prejudice is that the judge ruled in favor of Husband on "virtually every single issue." However, "[t]he mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge." *Robin Farms Inc.*, 989 S.W.2d at 247. She does contend however, that there was an appearance of impropriety because the judge recused himself when Husband and Wife were defending themselves against a suit brought by a third party.

■ A recusal is required based upon an appearance of impropriety when "a 'reasonable' person would have questioned the impartiality of the judge." *Sewell–Davis v. Franklin*, 174 S.W.3d 58, 62 (Mo. App. W.D.2005). The commentary to Rule 2.03, Canon 2 A, regarding the appearance of impropriety states, in pertinent part:

(c) the judge knows that he or she ... has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other ... interest, that could be substantially affected by the proceeding;

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer on the proceeding;

(iii) is known by the judge to have [an] interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

Rule 2.03, Canon 3 E(1).

---

**8.** Rule references to Canons are to Missouri Code of Judicial Conduct (2004) unless otherwise indicated.

**9.** Including but not limited to instances where:

(1) A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

. . . .

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy ...;

. . . .

The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.

This is judged not from the point of view of a legal professional, but from that of an objective, layperson. *Robin Farms Inc.*, 989 S.W.2d at 249.

Wife offers no explanation, other than speculation, as to why the judge recused himself in the prior matter. She simply states in her brief that she "does not believe that [the judge] recused from the [first case] based upon any prior relationship or representation of the plaintiff." By this statement she seems to be implying some connection the judge had to her or Husband. However, Wife did not present any evidence to show the existence of this alleged connection, or why it created an appearance of impropriety. Therefore, we cannot say that the trial court erred in failing to withdraw from this case. Point III denied.

### POINT IV

Finally, Wife argues that the trial court erred in its calculation of the amount of child support. She contends that it was an abuse of discretion not to attribute the $1,000 per month payment the business makes on a loan on the real property distributed to Husband as part of his income in its Form 14 calculation. We disagree.

 We will affirm the trial court's child support award unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Smith v. White*, 114 S.W.3d 407, 412 (Mo.App. W.D. 2003). "When determining a child support obligation, the application of Supreme Court Rule 88.01 and Form 14 is mandatory; the trial court must calculate the gross income of a self-employed parent as directed by this rule and form." *DeArriba v. DeArriba*, 100 S.W.3d 134, 140 (Mo.App. E.D.2003). For purposes of Form 14, "[i]ncome" consists of:

a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children.

"DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 1: *Gross Income*, A. *COMMENT*. The Directions further specify that 'significant employment-related benefits *may* be included, in whole or in part, in gross income' in appropriate circumstances." *Smith*, 114 S.W.3d at 412 (quoting Form 14, Directions and Comments for Use). In addition, the Directions also state:

*Self–Employment:* Gross income from an unincorporated business is the net profit or net loss on the schedules filed as part of the parent's federal income tax return. However, expense reimbursements or in kind payments by the business to pay for expenses of the parent that are personal in nature and not business related may be income to the parent.

Form 14, Directions and Comments for Use.

The trial court adopted Husband's Form 14 and found that his "monthly gross income in line [one] ... ($3,596) is one-twelfth of the net income shown in Schedule C of his 2003 federal income tax return." This did not include the $1,000 payment on the real estate loan. The record reveals that these payments were to satisfy the loan on the property, where both the home and the business are located. Glor's appraisal valued this property at $240,000, including, both parties agree,

$38,300 for the marital home and its accompanying five acres.

Wife relies on *Boudreau v. Benitz*, 827 S.W.2d 732, 734 (Mo.App. E.D.1992), in arguing that the $1,000 loan payment was a "significant employment-related [benefit]," which should have been attributed to Husband's income. Her reliance on *Boudreau* is misplaced. In that case, the appellate court affirmed the trial court's decision to consider all of the expenses paid by his corporation as income to the father. *Boudreau*, 827 S.W.2d at 734. However, contrary to Wife's contention, *Boudreau* does not stand for the proposition that the trial court was required to consider those expenses as income.

 The use of the word "may" in the Directions and Comments for Use for Form 14 indicates a grant of discretion to the trial court. *See Smith*, 114 S.W.3d at 413 (discussing Gross Income, A. Comment, which states that a court may include employment related benefits as income); *State ex rel. Cote v. Kelly*, 978 S.W.2d 812, 816 (Mo.App. S.D.1998); *In re Marriage of Chorum*, 959 S.W.2d 900, 905 (Mo.App. S.D.1997) (the word "may" allows, but does not require, courts to exclude depreciation, investment tax credits and other non-cash reductions of gross receipts from "ordinary and necessary expenses" of the self-employed, thereby imputing them as parent's income).

Gross income, Comment I of Form 14 at issue in this case, likewise states that "expense reimbursements or in kind payments by the business to pay for expenses of the parent that are personal in nature and not business related *may* be income to the parent." (emphasis added). Thus, there is no requirement that the trial court consider the $1,000 per month payment made by the business on the real estate loan which includes the marital home as income to Husband. Given our standard of review, we see no abuse of discretion in the trial court's decision to use the amount of income reflected in Husband's income tax return as his gross income for purposes of calculating a child support award. Point IV is denied.

The portion of the judgment dividing marital property is reversed and the case is remanded for the entry of a judgment consistent with this opinion. In all other respects the judgment is affirmed.

SHRUM, P.J., and BARNEY, J., concur.