Renee FRANKLIN, Respondent,

v.

Glen FRANKLIN, Appellant.

No. ED 87422.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 6, 2007.

Michael L. Schechter, Clayton, MO, for appellant.

Modupeola Bandele Oji, St. Louis, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Glen Franklin (Husband) appeals from the Judgment of Dissolution of Marriage to Renee Franklin (Wife). On appeal, Husband argues the trial court erred in awarding Wife (1) $650 per month for child support, (2) $55,000 in reimbursement because Husband squandered the marital residence, (3) retroactive child support, and (4) $5,800 relating to summer camp, tuition, tax penalties, and attorney's fees. We affirm as modified.[1]

Husband and Wife were married on September 5, 1987. The parties separated August of 1999. One child (Child) was born of the marriage on July 9, 1992.

In December of 1984, prior to meeting Husband, Wife purchased the residence located at 290 Amberjack Drive, Ballwin, Missouri, which later became the marital residence. In 1986, Husband and Wife met. At that time, Husband and Wife purchased a business together from a sole proprietor and renamed it Franklin Graphics & Lettering (Franklin Graphics). Husband and Wife jointly signed for the loan in the amount of $40,000 to purchase Franklin Graphics. The former owner was to retake possession of the business if the loan was not paid off.

Wife worked a full-time job with Johnson & Johnson and also worked about 40 hours a week on evenings and weekends at Franklin Graphics. In 1990, Wife gave up her position with Johnson & Johnson to work full-time at Franklin Graphics. Wife worked at Franklin Graphics from 1990 to 1994. Wife was responsible for writing up orders, ordering goods, and ensuring that the appropriate paperwork reached the accountant, who was employed separately by Franklin Graphics. Husband acted as CEO and President of Franklin Graphics. Husband traveled frequently and was responsible for attracting new business. Husband recommended new pieces of equipment for the business and was also in charge of hiring and firing employees for Franklin Graphics.

In 1992, Husband and Wife used the marital residence as collateral for a $30,000 loan from the Small Business Administration (SBA). This loan was used to purchase additional equipment and as a line of credit for Franklin Graphics. Wife testified that she was initially against the idea of taking the loan from the SBA and was against the idea of using the house as collateral for the loan. Eventually, however, Wife agreed to borrow the money from the SBA and to use the marital residence as collateral.

In 1994, Franklin Graphics began to encounter serious financial difficulties. Due to these financial difficulties, Husband and Wife filed for bankruptcy multiple times from 1995 to 2002. Sometime around the end of 1994 or beginning of 1995, Wife ceased to work for Franklin Graphics.

Husband, Wife, and Child lived together in the marital residence until August of 1999, when Wife and Child moved out of the marital residence due to physical abuse by Husband. Wife testified that she wanted to remain in and keep the house, but Husband refused to move out. Wife made her last mortgage payment on August 9, 1999 and moved out of the house on August 28, 1999.

1. Husband complains that Wife's brief violates Rule 84.04 and, by implication, should be stricken. While noting the deficiencies complained of, we find these deficiencies are not egregious enough to warrant striking Wife's brief. We, therefore, choose to address the merits of Wife's case.

Wife and Child eventually settled into an apartment, where they were residing at the time of trial. When Wife and Child moved into the apartment, Child was attending Cathedral School and was in second grade. Wife testified she paid for Child's tuition from kindergarten through second grade, and a portion of third grade, and by agreement of the parties, Husband was responsible for the tuition from third through sixth grade. Wife testified that there were several occasions when Husband failed to pay the full tuition, and as a result, Child did not receive his report card. On those occasions, Wife made up the deficit. Wife testified she was never reimbursed for these amounts which totaled $1,000.

In 2002, after several failed attempts at settlement negotiations with the SBA, the SBA foreclosed on the marital residence. At the time, Husband was residing by himself in the marital residence. Wife testified she did not find out about the foreclosure proceedings until 2003 when she attempted to purchase a car.

Husband remained in the marital residence for a year after the foreclosure proceedings, and eviction proceedings were filed. In 2003, Wife received a subpoena at her apartment requesting that she vacate the marital residence. Because Wife no longer resided at the marital residence, she attempted to explain that she could not vacate the property. Wife testified that the attorney serving the subpoena replied, "See you in court." Wife had to hire an attorney to defend the suit, and incurred attorneys' fees and costs of $1,500 in connection with the eviction proceedings.

On August 11, 2003, Wife filed her Petition for Dissolution of Marriage, together with her Statement of Income and Expenses and Statement of Property. At the time of filing her original petition, Wife stated her income was $1,647.60 per bi-weekly pay period (or $39,542.40 per year) and had expenses averaging $4,050 per month. She received no child support from Husband, and had to borrow money from her parents to pay her bills. Husband filed his Answer and Counter-Petition for Dissolution of Marriage on September 22, 2003, together with his Statement of Income and Expenses. In his original Statement of Income and Expenses, Husband alleged that his income was $4,287 per month ($51,444 per year). In December of 2003, Husband filed a First Amended Statement of Income and Expenses, alleging that his income was $3,322 per month (or $39,864 per year).

In May of 2004, Wife received $500 from Husband as part of Child's summer camp expense for 2003. Wife filed her Amended Petition, reflecting the $500 credit. On May 14, 2004, she also filed her Amended Statement of Income and Expenses, reflecting her change in income to $2,096.16 per bi-weekly pay period (or $54,500.16 per year).

At trial, Wife retained Donnell Reid, a former commercial loan officer, as an expert to determine Husband's income. In his role as commercial loan officer, Mr. Reid had reviewed many financial statements and banking records for small businesses for the purpose of approving loans. Mr. Reid analyzed the financial statements produced by Husband, to determine Husband's income, and assess the value of the business. According to the financial statements and tax returns provided by Husband, Husband's average income for the years 2000, 2001, and 2002 was $33,000. Mr. Reid, however, also reviewed numerous cancelled checks and bank statements and noticed a pattern of spending with Husband writing business checks for personal expenses. He also noticed a pattern of writing a large number of checks with the notation of "C.O.D." at the bottom.

Mr. Reid asked Wife about this, and she informed him it was Husband's pattern to issue checks for cash and those for even amounts were used for personal reasons, and those for specific amounts were for business reasons.

In arriving at Husband's income, Mr. Reid examined checks paid by Franklin Graphics for Husband's personal expenses such as, rent and utilities for his home, his son's school tuition, the purchase of a new car, groceries and escrow payments for the purchase of his new home. He also added the checks made payable to cash which he believed were for personal use, which, in the case of small businesses, becomes part of income. The cancelled checks and bank statements reviewed were received into evidence, representing the years 2002, and 2003 respectively. Mr. Reid came to the conclusion that that Husband was spending an average of $100,000 a year out of the business on personal expenses, and his report was admitted into evidence. After reviewing the income and expenses of Franklin Graphics, Mr. Reid also came to the conclusion that the value of the business was at least $200,000.

Wife testified that at the time of the foreclosure the residence had a value of between $120,000, the assessed value, and $180,000, the fair market value, based on the value of comparable properties sold in the neighborhood. Using the lower of the two, Wife subtracted the first mortgage with Bank of America in the amount of $45,000, and the SBA lien amount in the amount of $35,000. Wife requested that half of this accumulated equity be awarded to her in the dissolution decree, as well as half of the business.

At the close of trial, the trial court requested Wife to file her Form 14, which was admitted into evidence. The trial court entered its Judgment with a different Form 14, which was prepared by the trial court. In its Judgment the trial court awarded Wife $650 per month in child support, reimbursement of $5,800 in connection with expenses paid by Wife on behalf of Husband, and $55,000 as equity in the marital home, which the trial court found was squandered by Husband in favor of his business. The trial court awarded Husband the marital business known as Franklin Graphics.

The record shows that through some inadvertence, the Form 14 became separated from the Judgment and copies were made and sent to the parties without the Form 14 attached. The Judgment was subsequently placed in the court file without the Form 14. The record also reveals the trial judge eventually recovered the original Form 14 and sent a copy to the parties. This appeal follows.

■■■ Our review of a dissolution of marriage judgment is governed by the principles articulated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. We view the evidence in the light most favorable to the judgment. *Youngberg v. Youngberg*, 194 S.W.3d 886, 890 (Mo.App. S.D.2006). It is for the trial court to determine the weight and value to be given to the witnesses. *Id.*

In his first point, Husband argues the trial court erred in awarding Wife $650 per month in child support. Husband further argues the trial court violated Rule 88.01, failed to attach a Form 14 to its judgment or to articulate its finding of the child support amount, and erroneously imputed income of $90,000 per year to Husband. We disagree.

■■■ An award of child support is within the sound discretion of the trial

court. *Forde v. Forde,* 190 S.W.3d 521, 531 (Mo.App. E.D.2006). We will not disturb an award of child support unless the evidence is "palpably insufficient" to support it. *Id.* Under Rule 88.01(e), there is a rebuttable presumption that the Form 14 amount is the proper amount of child support, but the presumption may be rebutted if the trial court finds in a written finding or a specific finding on the record that the Form 14 amount is unjust or inappropriate. *See Nelson v. Nelson,* 14 S.W.3d 645, 652 (Mo.App. E.D.2000). If the trial court finds the Form 14 calculations provided by the parties to be incorrect and rejects them, then the trial court has the duty to create its own correct Form 14 calculation and the failure to do so is reversible error. *Anderson v. Anderson,* 4 S.W.3d 639, 640 (Mo.App. E.D.1999). The lack of specific findings as to how the trial court calculated its Form 14 will not automatically trigger a reversal on appeal on that issue, provided the record clearly indicates how the trial court arrived at its Form 14 amount. *Id.* at 640–641.

 Here, the trial court made specific findings in its judgment as to the income of the parties, imputing income of $7,500 per month (or $90,000 per year) to Husband and finding that Wife earned $4,542 per month (or $54,504 per year). The trial court gave Wife credit for the additional child-rearing costs previously found during the hearing of the Motion and Affidavit for Temporary Child Support, as supported by Wife's Statement of Income and Expenses, and gave Husband credit of 34 percent for periods of overnight visitation with Child. The trial court found the basic child support amount pursuant to the Form 14 to be $893. The trial court found that, after considering all the relevant factors, the presumed child support amount was unjust or inappropriate

and awarded child support in the amount of $650.

While the trial court did not expressly state that it rejected the Form 14s provided by Husband and Wife, in its judgment it found, after considering all the relevant factors, that the presumed child support amount was unjust or inappropriate. The record shows the trial court attached its Form 14 to the judgment, but through some inadvertence the Form 14 became separated from the judgment, which was copied and mailed out to the parties without the Form 14. The record shows the trial court later provided a statement to that effect together with a copy of the Form 14 it relied upon.

Husband argues that even if the trial court had included its Form 14 calculation, it erred in imputing to him income of $7,500 per month (or $90,000 per year). Husband filed his original Statement of Income and Expenses, alleging that his income was $4,287 per month (or $51,444 per year). In his First Amended Statement of Income and Expenses, Husband alleged his income was $3,322 per month (or $39,864 per year). During discovery, Husband was uncooperative in producing his banking information, and was ultimately sanctioned by the trial court. At trial, when Wife's attorney questioned Husband about whether he had filed tax returns, he was evasive. When questioned about the inconsistencies in the various stated incomes, Husband simply blamed his accountant.

Wife's expert, Mr. Reid, examined the cancelled checks for 2002 and 2003. He discovered there were numerous checks paid by Franklin Graphics for Husband's personal expenses such as, rent and utilities for his home, his son's school tuition, the purchase of a new car, groceries, and escrow payments for the purchase of his new home. He also added the checks

made payable to cash which he believed were for personal usage, which, in the case of small businesses, becomes part of income. He initially believed that between 2002 and 2003, Husband was spending an average of $100,000 a year out of the business on personal expenses. While Mr. Reid eventually decreased the amount relating to "personal usage" by approximately $30,000, he maintained under cross-examination that the various bank statements supported his conclusion that Husband was spending between $9,000 to $10,000 per month.[2] Based on the information in the cancelled checks and bank statements admitted into evidence, as well as the testimony of Mr. Reid, the trial court's finding that Husband's income was $90,000 per year was not against the weight of the evidence.

The trial court did not abuse its discretion in awarding Wife $650 per month in child support. Moreover, the trial court did not violate Rule 88.01. Finally, the trial court did not err in imputing income of $90,000 to Husband. Point one is denied.

In his second point, Husband argues the trial court erred in finding that Husband squandered the marital residence and awarding Wife $55,000 in reimbursement. Husband argues the trial court's finding that there was $55,000 in equity in the marital residence at the time of foreclosure was not supported by substantial evidence. We disagree.

 In the case at bar, there was sufficient evidence to support a finding that

Husband squandered the marital residence. The marital residence was purchased by Wife prior to the marriage. The marital residence was subsequently used as collateral for the SBA loan. Wife paid the mortgage until she moved out of the house in August of 1999. When the business ran into financial difficulty the IRS placed a $28,000 lien on the house. The $28,000 was negotiated down to $4000, which Wife paid in order to keep the house.

In 2001, Wife filed for bankruptcy and listed both business and personal debts. Because the mortgage payment on the residence had fallen behind when Wife filed for Chapter 13 bankruptcy, she had to sign a relief from stay for Bank of America. Bank of America required Wife to pay them $5,400 in connection with her bankruptcy. Wife again stated that she wanted to keep the house, and asked Husband to move out of the house so she could move back in, and borrow the money from her parents to pay Bank of America. Husband refused to move out of the house and instead promised Wife he would pay the $5,400 to Bank of America, pay the mortgage payments arrearage, and then give Wife $7,500 to quit claim the property to him. Husband did none of the above.

In 2002, the SBA foreclosed on the marital residence. Husband was residing in the house at the time. Wife testified she did not find out about the foreclosure proceedings until 2003 when she attempted to purchase a car. Prior to the foreclosure, there were several settlement negotiations with the SBA, but Husband and Wife

---

**2.** We note that Husband's attorney indicated at the time Mr. Reid determined Husband's income, he "didn't have all the subpoenaed documents." It is unclear from the record to which documents Husband's attorney is referring and to what extent these documents would have changed Mr. Reid's conclusion regarding Husband's income. Moreover, the record shows that Husband did all that he could to avoid providing Wife with accurate information as to his income, and while Mr. Reid may have revised his opinion of Husband's income after being given a spreadsheet purportedly documenting all the business expenses, Mr. Reid only received the information the day before the trial.

lacked the money to pay the negotiated settlements. When Wife filed her separate bankruptcy, Husband and his attorney prepared a negotiated settlement of $35,000 to remove the lien by the SBA on the residence. However, Husband testified that the settlement agreement was never completed.

Husband testified that he employed an attorney to handle the foreclosure proceedings for both Husband and Wife. However, Husband never told Wife about the foreclosure proceedings, even though Wife had stated repeatedly her desire to keep the house. Husband negotiated a settlement that allowed the residence to be foreclosed upon so he could have the business free and clear without the knowledge of Wife.

Husband argues he did not squander the marital residence, but rather lost the house because of his inability to pay the mortgage on the property. A review of the record reveals otherwise. In November and December of 2002, Husband wrote checks totaling $17,500 to purchase a Dodge Durango SUV. In addition, Husband set aside marital funds in the amount of $24,000 as escrow for the purchase of a house for himself.

■■■ The trial court enjoys broad discretion in making determinations on issues relating to the squandering of assets, because it is in the better position to judge credibility. *Foraker v. Foraker*, 133 S.W.3d 84, 104 (Mo.App. W.D.2004). Therefore, where a court hears evidence showing that a spouse has squandered a marital asset in anticipation of a dissolution action, it may order reimbursement. *Id.* Here, although Husband testified he lost the house because he lacked the funds to pay the mortgage, based on the evidence, the trial court was free to disbelieve his testimony.

Husband further argues the trial court's finding that there was $55,000 in equity in the residence at the time of foreclosure is not supported by substantial evidence. Wife testified that she used the assessed value of the residence to calculate the equity in the home, which was $120,000, but she believed that the fair market value of the residence was $180,000. Husband never objected to Wife's testimony on this point at trial. Husband argues that "even if the trial court found that Husband engaged in marital misconduct by failing to pay the mortgage payments as they came due, it could not punish him by entering an order that deprived him of *any* portion of equity in the marital residence and exceeded the amount requested by Wife."

■■■ Under Section 452.330.1(4), RSMo 2000,[3] the trial court is required to consider the parties' conduct during the marriage when dividing the marital property. *Nelson v. Nelson*, 25 S.W.3d 511, 519 (Mo.App. W.D.2000). Although it is not a legitimate basis for "punishing" a party when dividing marital property, "marital misconduct is a factor in property division when the offending conduct places extra burdens on the other spouse." *Id.* As mentioned above, Husband spent $17,500 cash on a new car a few months after the foreclosure on the residence. In addition, Husband set aside $24,000 cash as escrow for the purchase of a house for himself after his eviction proceedings. Based on Husband's misconduct, the trial court trial had the discretion to consider the misconduct as a factor in the property division.

■■■ Even if, as Husband argues, he committed no misconduct, the trial court is still vested with considerable dis-

**3.** Unless otherwise indicated, all further statutory references are to RSMo 2000.

cretion in dividing marital property, and we will only interfere when the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Thomas v. Thomas*, 196 S.W.3d 57, 60 (Mo.App. W.D.2005). An abuse of discretion will be found only if the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration. *Id.*

Here, based on Wife's calculations, the equity in the residence would have been between $40,000 and $100,000. There was sufficient evidence to support the trial court's finding that the equity in the residence was $55,000. Since Wife testified that she wanted to keep the residence, it was reasonable for the trial court to use its discretion to award Wife the equity in the residence, while awarding Husband the business, which Wife's expert assessed to be worth at least $200,000. The trial court did not abuse its discretion in awarding Wife $55,000 in reimbursement. Point two is denied.

In his third point, Husband argues the trial court erred in awarding Wife retroactive child support. Specifically, Husband argues the trial court failed to consider the relevant set-off amounts paid by Husband on behalf of Child and Wife failed to prove her expenses for Child with certainty. We disagree.

■ The trial court has considerable discretion in matters of child support and in making child support retroactive. *Malawey v. Malawey*, 137 S.W.3d 518, 526 (Mo.App. E.D.2004). A trial court's judgment will not be reversed absent an abuse of discretion. *Id.* The trial court has authority to award child support retroactive to the date of filing the petition. Section 452.340.1; *Id.* at 525–526.

Under Section 452.340.1, relevant factors to be considered by the trial court in determining whether to award a parent retroactive child support include: (1) the financial needs and resources of the child; (2) the financial resources and needs of the parents; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child, and the child's educational needs; (5) the child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) the reasonable work-related child care expenses of each parent.

■ Weighing the relative factors under Section 452.340.1, the financial resources and needs of Mother warranted an award of retroactive child support. At the time of filing her Amended Petition, Wife was earning $54,500.16 per year according to her Statement of Income and Expenses. At trial, she testified she was earning approximately $37,000 per year at the time of filing. Wife testified she was only able to make ends meet by borrowing money from her parents. Wife testified that while Husband was · responsible for paying Child's private school tuition, she paid for everything else including Child's summer camp expenses, work-related child care expenses, school fees and tutoring as well as health insurance and the cost of Child's orthodontia.

Contrary to Husband's assertions, the trial court did not abuse its discretion when it entered its Judgment ordering Husband to pay retroactive child support. The record shows Husband did not give Wife any child support prior to Wife's filing a Motion and Affidavit for Temporary Child Support dated October 21, 2004.

Moreover, the record shows the trial court provided Husband a set-off in the amount of $1,932 for child support paid

pursuant to a pendente lite order for temporary child support entered in October of 2004. (*See Halupa v. Halupa,* 943 S.W.2d 272, 275 (Mo.App. E.D.1997))(a party is entitled to receive credit against the retroactive award of temporary support for the voluntary amounts paid to the child between the time of separation and the time of trial). However, since Wife incurred the majority of the expenses on behalf of Child prior to dissolution, the trial court did not abuse its discretion in awarding retroactive child support in this case. The trial court ordered Husband to pay child support retroactive to August 1, 2003, ten days prior to the filing of Wife's Petition for dissolution on August 11, 2003. Wife contends that the date was merely a clerical error, and that the trial court intended to make the order retroactive to August 11, 2003. We agree. We correct the trial court's award of retroactive child support pursuant to Rule 84.14,[4] and affirm the trial court's award of child support retroactive to August 11, 2003.

In his fourth and final point, Husband argues the trial court erred in awarding Wife $5,800 relating to Child's summer camp, tuition, tax penalties, and attorney's fees as Wife's alleged payments were voluntary and made with marital funds. We disagree.

"In dividing marital debt between the parties, the trial court is vested with broad discretion in determining how and in what manner the debts should be divided, and this court will not disturb such a division absent a clear showing of an abuse of discretion." *Cross v. Cross,* 30 S.W.3d 233, 236 (Mo.App. E.D.2000). An abuse of discretion occurs when a trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* The trial court has the authority to distribute marital debts in the sense that one spouse may be assigned the primary duty of paying off the debt and holding the other spouse harmless. *Id.*

In her petition, Wife requested reimbursement for the following expenses incurred for which Husband was responsible: reimbursement of $800 for payments made for Child to attend a summer camp in Maryland; reimbursement of $1,000 for tuition payments Husband was obligated to make; reimbursement of $2,000 for a tax penalty on the business that Wife paid to release a lien of $28,000; and reimbursement of $1,500 in attorneys' fees incurred by Wife in connection with eviction proceedings on the marital residence when Husband failed to vacate the residence one year after foreclosure.

Husband contends these payments were voluntarily made by Wife and, therefore, under *Meyer v. Meyer,* 77 S.W.3d 40 (Mo. App. E.D.2002), Wife is not entitled to reimbursement. In *Meyer,* the court found that expenses paid by wife for an emancipated child to pursue post-graduate education were voluntary. *Id.* at 42. The court also found that because there was no legal obligation to provide such support, she had no claim for reimbursement

---

4. Pursuant to Rule 84.14, an appellate court can "give such judgment as the [trial] court ought to give" and instructs that "[u]nless justice otherwise requires, the [appellate] court shall dispose finally of the case." Here, although the trial court erred in designating date of filing of the petition, we can render judgment that should have been rendered by the trial court in lieu of remanding the error for correction. In other words, an appellate court can render the judgment the trial court should have rendered "when the record and evidence give us confidence in the reasonableness, fairness, and accuracy of the conclusion reached." *Malawey,* 137 S.W.3d at 526 (citing *LaRocca v. LaRocca,* 135 S.W.3d 522, 525 (Mo.App. E.D.2004)).

against husband. *Id.* The court held that wife lacked standing to sue because she failed to establish a legally cognizable interest in the subject matter and pled no harm directly suffered as a result of husband's failure to pay the minor child's tuition. *Id.*

The case at bar is distinguishable from *Meyer*. Here, the obligations Wife paid and sought reimbursement for were created by Husband. First, Husband was the one who insisted that Child attend a parochial school. Through mutual agreement, Wife was responsible for Child's tuition from Kindergarten through second grade and Husband was responsible for Child's tuition from third grade through sixth grade. The record demonstrates, however, that Husband fell behind in some payments, and in order for Child to receive his report card, Wife paid the deficit for which Husband promised to reimburse Wife. Wife submitted receipts of the payments at trial, without objection from Husband. During cross-examination, Husband claimed to have repaid Wife, but was unable to produce evidence to that effect. The trial court ordered Husband to reimburse Wife $1,000 for tuition payments.

Second, Wife testified that summer camp cost her an average of $200 per week. In the summer of 2003, however, Husband informed Wife that he wanted Child to go to basketball camp for one week in Maryland. The price of the camp was $450 for the week. Husband asked Wife to pay the deposit and promised to pay the rest. Husband then asked Wife to pay the remainder of the tuition and promised to reimburse Wife for the balance. Husband also told Wife that he would take Child himself, but did not. Wife paid for the camp, airfare, as well as miscellaneous costs for parking, bedding, pillows, and blankets. Wife also paid for one week's worth of car rental as well as hotel for herself. Wife testified that her costs for Child to attend camp in Maryland were in excess of $1,500, but Husband only paid her $500. Wife testified she could not afford to send her son to camp in Maryland but did so only because Husband was insistent and because he promised to reimburse her for the expense. The trial court ordered Husband to reimburse Wife $800 for summer camp expenses.

Third, the business incurred a tax penalty of $28,000 for failure to remit payroll taxes collected. Husband and his attorney negotiated the debt down to $4,000 through an offer in compromise. Wife paid the $4,000 but believed that Husband should have paid half of it. The trial court ordered Husband to reimburse Wife $2,000 for business taxes.

Finally, the marital residence was foreclosed upon in 2002 without Wife's knowledge. Husband failed to vacate the residence for a year, until eviction proceedings were filed. In 2003, Wife was served with a suit at her apartment, to vacate the marital residence. Wife attempted to explain to the attorney who served her that she did not reside at the residence and thus could not vacate it, but he simply told her he would see her in court. Wife testified she felt compelled to hire an attorney to defend her in the eviction suit, which cost her $1,500. Wife argues that since Husband was the one who caused the residence to be foreclosed on without her knowledge, and since he was the one who failed to vacate the residence after the foreclosure, he should be responsible for the attorney's fees that she incurred in defending the suit. The trial court ordered Husband to reimburse Wife $2,000 for attorneys' fees.

Here, the trial court did not abuse its discretion in ordering Husband to reimburse Wife for the expenses set forth above. Wife, however, recognizes the trial

court made an error in awarding her $2,000 in connection with her attorney's fees for the eviction proceedings, instead of $1,500, the amount requested by Wife. Pursuant to Rule 84.14, we amend the trial court's order regarding reimbursement of attorney's fees from $2,000 to $1,500.

In conclusion, the trial court did not err: in awarding Wife $650 per month in child support; finding that Husband squandered the marital residence and ordering him to pay Wife $55,000 in lost equity; awarding Wife retroactive child support; and ordering Husband to reimburse Wife for expenses she incurred on behalf of Husband.

Judgment affirmed as modified.

BOOKER T. SHAW, C.J. and GARY M. GAERTNER, SR., J., concur.